No. 73–5256. LEE *v.* UNITED STATES. C. A. 4th Cir. Certiorari denied.

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE MARSHALL concurs, dissenting.

Petitioner was convicted of two counts of distributing heroin in violation of 21 U. S. C. § 841 (a)(1); he later pleaded guilty to a third count. After petitioner's plea on the third count, the District Court sentenced him to concurrent 15-year terms on the three counts, recommending that he be given drug addiction treatment at the Federal Youth Center at Ashland, Kentucky.

It refused, however, to sentence petitioner under the provisions of the Narcotic Addict Rehabilitation Act of 1966 (hereafter NARA), 18 U. S. C. § 4251 *et seq.* Petitioner claims that in the circumstances of this case the trial judge abused his discretion in refusing to sentence him under the NARA.

The three charges against petitioner grew out of three transactions in which he acted as a middleman, purchasing heroin from two different wholesalers for a federal agent. Petitioner received only a total of $15 from the three sales, which was used to buy heroin for his own personal use. Petitioner also retained some of the drug he had purchased for his own personal use.

The District Court refused to sentence petitioner under the NARA with the possibility of early release to the community because he had "sold" heroin, and was not just a user.[1]

Under 18 U. S. C. § 4251, individuals are generally not "eligible" for NARA sentencing if they have sold narcotics; Congress, however, created an express exception for those who sold primarily to support their own addiction. Section 4252, on which the Court of Appeals relied in affirming the District Court, provides that if a court believes an eligible offender to be an addict, it "may" place him in the custody of the Attorney General to determine whether he is an addict likely to be rehabilitated through treatment. Section 4253 provides that if a court, after this study, finds that an offender is an addict and is likely to be rehabilitated, it "shall" sentence him under the NARA, with exceptions not here relevant.

---

[1] Pet. for Cert. 11; Memorandum for United States in Opposition 3 n. 1. Similarly, the Solicitor General argues that discretion was properly exercised because petitioner was an "active conduit" of drugs who knew many drug wholesalers. *Id.,* at 3.

An individual sentenced under the NARA could be released after six months upon a report from the Attorney General and certification from the Surgeon General that he has made sufficient progress to warrant his release under supervision; he can also be held up to 10 years if such progress is not made. 18 U. S. C. §§ 4254, 4253. After release, § 4255 provides for a program of aftercare in the community. This aftercare, consisting of psychiatric, medical, and vocational support, was considered the crucial contribution of the NARA to drug-addiction treatment.[2] It is recognized that without such ongoing aftercare, the overwhelming majority of addicts return to their habits shortly after release from prison or voluntary drug-addiction programs.[3]

Section 4252 undoubtedly preserves the discretion of the sentencing judge to refuse to apply the provisions

[2] H. R. Rep. No. 1486, 89th Cong., 2d Sess., 12–13, 14; Hearings on the Narcotic [Addict] Rehabilitation Act of 1966 before a Special Subcommittee of the Senate Judiciary Committee, 89th Cong., 2d Sess., 19 (1966) (statement of Attorney General Katzenbach).

[3] "Under our present laws we confront the addict almost solely as a criminal, and though we can effectively remove a relatively few addicts from the streets where they are public menaces, we can do very little to prevent them from returning to society with the cause of their addiction unsolved.

.        .        .        .        .

"Physiologically, even a long-term heroin addict can be cured of his physical craving in a relatively short time. His body no longer requires the drug. But obviously, his underlying emotional problems and the more immediate factors like environment and unemployment are as pressing as they ever were.

.        .        .        .        .

"Clearly, neither voluntary commitment nor criminal imprisonment are working. Civil commitment of addicts accompanied by a program of aftercare in the community gives us a way out of the dilemma." Id., at 16–17 (statement of Attorney General Katzenbach); see id., at 36 (statements of Attorney General Katzenbach and Myrl Alexander, Director, Federal Bureau of Prisons).

of the NARA even to addicts who are "eligible" under § 4251; the provisions of the NARA are available as an alternative and are not mandatory. See H. R. Rep. No. 1486, 89th Cong., 2d Sess., 8–9, 13.

Nonetheless, it seems that Congress contemplated a more enlightened and less rigid approach to narcotics than was employed by the trial judge in the instant case.

The NARA was the product of extended consideration by the Departments of Justice, Treasury, and Health, Education, and Welfare, which stressed the necessity for flexibility in dealing with the problem of drug addiction:

> "These procedures mark a fundamental reorientation toward the problem of addiction. The Attorney General in his testimony before the subcommittee stated that for too long the law had stressed punitive solutions and neglected medical and rehabilitative measures. . . .
>
> .  .  .  .  .
>
> ". . . [T]he bill provides alternatives which provide a needed flexibility in the law. The practical effect of the implementation of the law provided for in the bill, is that strict punishment can be meted out where required to the hardened criminal, while justice can be tempered with judgment and fairness in those cases where it is to the best interest of society and the individual that such a course be followed.
>
> ". . . The testimony presented at the hearings has clearly shown the need for the flexible approaches provided by civil commitment and postconviction commitment which would be made possible by this legislation." *Id.*, at 8–9.

Congress recognized that institutional treatment such as petitioner might receive in this case was ineffective,

without more, in curing drug addiction, and that individuals will generally return to addiction when released from prison even if their physiological habits have been broken. It also explicitly acknowledged that addicts, like petitioner, will engage in criminal activity to support their habits and that they will often spread addiction to others. *Id.*, at 11; S. Rep. No. 1667, 89th Cong., 2d Sess., 13. Weighing these considerations, Congress determined that even those who sold drugs, if they did so primarily to support their own habits, should be eligible for NARA consideration. The exception for addicts who sold to support their own habits was not created casually or without consideration. Civil Commitment and Treatment of Narcotic Addicts, Hearings before Subcommittee No. 2 of the House Committee on the Judiciary, 89th Cong., 1st and 2d Sess., ser. 10, pp. 84–85 (statement of Attorney General Katzenbach). It was felt that the exception did not endanger public safety or allow the NARA to be abused. See Hearings on the Narcotic [Addict] Rehabilitation Act of 1966 before a Special Subcommittee of the Senate Judiciary Committee, 89th Cong., 2d Sess., 18 (1966) (statement of Attorney General Katzenbach).

The District Court Judge in this case effectively wrote this congressional determination out of the NARA, since he apparently refused to extend the benefits of the Act to petitioner because petitioner had "sold" drugs. This was the ineffective and inflexible treatment into which judges were forced before the passage of the NARA and which Congress attempted to cure; it does not seem consonant with the congressional purpose to continue such simplistic treatment of the problem of addiction after the NARA is available. I would grant certiorari, vacate the judgment below, and remand the case for fuller consideration of the advisability of treatment under the NARA.